IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| ZENIA HELBIG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08-3214-CV-S-ODS |
| ) | |
| JOSEPH McCROY, ) | |
| ) | |
| Defendant. ) | |

## ORDER ALLOWING LIMITED DISCOVERY

Pending is Defendant Joseph McCroy's Motion to Substitute the United States of America as defendant (Doc. # 3). Also pending is the United States of America's contemporaneously filed Motion to Dismiss for Failure to Exhaust Administrative Remedies (Doc. # 4). The Court's ruling on both motions will be deferred pending limited discovery by Plaintiff.

## I. BACKGROUND

The above-captioned action is one for common-law libel, filed by Plaintiff Zenia Helbig, a private citizen, against Defendant Joseph McCroy, a First Lieutenant in the United States Army. In March 2007, Plaintiff accepted a contracting position with British Aerospace Systems ("BAE"). She was assigned to the U.S. Army Training and Doctrine Command's ("TRADOC") Human Terrain System ("HTS") program. Plaintiff's employment required at least an Interim Secret security clearance.

In June 2007, while at Fort Hood, Texas in training prior to deployment to Baghdad, Iraq as part of the HTS program, Plaintiff entered into a debate with Defendant regarding potential future hostilities between the United States and Iran. Plaintiff states that in response to Defendant's comments that the United States should just invade every country in the Middle East, Plaintiff "jokingly" stated "Okay, if we invade Iran, that's where I draw the line, hop the border, and switch sides." Plaintiff

states that she was attempting to point out the absurdity of Defendant's comments and that she had no actual desire to defect to Iran.

Defendant informed the HTS Research Manager and Plaintiff's supervisor, Captain Matthew V. Tompkins, of the statement made by Plaintiff and indicated his belief that Plaintiff was a possible security concern. Captain Tompkins then discussed the matter with Lieutenant Colonel Edward J. Villacres, the leader of the HTS team that included Plaintiff and Captain Tompkins. Lieutenant Colonel Villacres and Captain Tompkins then discussed the matter with Colonel Steve Fondacaro, the HTS Program Manager. The three decided that Plaintiff's comment was foolish but not serious; Plaintiff was counseled to avoid making such statements in the future. Captain Tompkins states that Defendant was advised that the matter had been addressed and resolved. (Tompkins Declaration, p.2 ¶ 4). Lieutenant Colonel Villacres states that he did not inform Defendant of the status or result of the investigation or limit his ability to otherwise report Plaintiff's statement through alternate security channels. (Villacres Declaration, p.2 ¶ 5).

Defendant states that he did not get any response to his complaint from Captain Tompkins, nor direction not to report the incident to anyone else. (McCroy Declaration, p.2 ¶¶ 5-6). A few days later, Defendant reported Plaintiff's statement to Lieutenant Colonel Patrick Cusick, the Senior Army Officer in Charge of the U.S. Army HTS teams conducting the training exercise at Fort Hood. According to Lieutenant Colonel Cusick, when Defendant reported the incident to him, the training exercise was ongoing. Lieutenant Colonel Cusick told Defendant that he should remain focused on the training exercise. He also told Defendant that if he believed he needed to further report Plaintiff's statement, he was free to do so through the HTS chain of command. (Cusick Declaration, p.1 ¶ 4). That chain of command included Staff Sergeant Lisa Wilk, a Security Officer at the Fort Leavenworth Foreign Military Studies Office.

Upon returning to Fort Leavenworth, Kansas, Defendant reported Plaintiff's statement to Staff Sergeant Wilk. An investigation of Plaintiff was encouraged by the Foreign Military Studies Office. Plaintiff was subsequently dismissed from the HTS program and her employment with BAE was terminated.

2

In her complaint, Plaintiff alleges that "the motivation underlying McCroy's actions were solely based upon his personal dislike for civilian contractors in the HTS program in general - as well as a particular dislike for Helbig due to her lack of a military background - and not upon any real or legitimate belief that Helbig posed a security risk." Complaint at ¶ 12.

On June 26, 2008, Defendant filed a Motion to Substitute the United States as defendant pursuant to 28 U.S.C. § 2679(d)(1), stating Defendant was acting within the scope of his employment as an employee of the United States of America at the time of the actions referred to in Plaintiff's complaint, as certified by the United States Attorney for the Western District of Missouri. On the same day, the United States filed a Motion to Dismiss Plaintiff's complaint because Plaintiff's exclusive remedy against the United States is under the Federal Torts Claims Act ("FTCA") which requires plaintiffs to file an administrative claim and exhaust administrative remedies prior to filing a civil action.[1] Plaintiff has filed an Opposition to the motions, arguing that she should be entitled to challenge, through discovery, the validity of the scope of employment certification.

## II. DISCUSSION

When a federal employee is sued in his or her individual capacity for a common law tort, the Federal Employees Liability Reform and Tort Compensation Act of 1988 (the "Westfall Act") provides that the United States is substituted as the party-defendant in place of the federal employee upon certification that the employee was acting within the scope of his or her employment at the time of the incident out of which the claim arose. 28 U.S.C. § 2679(d)(1). Therefore, upon certification, the action is "deemed to be . . . brought against the United States," unless and until the district court determines that the federal employee was acting outside the scope of his employment. Osborn v.

---

[1] Plaintiff admits that if substitution is proper, her complaint must be dismissed because the United States has not waived its sovereign immunity with respect to the claims she has asserted.

Haley, 127 S. Ct. 881, 900 (2007).  The U.S. Attorney's certification, although subject to judicial review, "is prima facie evidence that the employee's challenged conduct was within the scope of employ.  Therefore, 'the burden of altering that status quo' is on the plaintiff, who must come forward with specific facts rebutting the government's scope-of-employment certification."  Brown v. Armstrong, 949 F.2d 1007, 1012 (8th Cir. 1991).  "[P]lantiff bears the burden of proving that the employee was not acting withing the scope of employ."  Id.  Accordingly, when the plaintiff raises a material dispute regarding the substance of the certification by alleging facts that, if true, would establish the defendant was acting outside the scope of employment, courts recognize that principles of fairness require the plaintiff to be allowed to conduct limited discovery to attempt to prove those facts.  See e.g., Stokes v. Cross, 327 F.3d 1210, 1214-15 (D.C. Cir. 2003); Borneman v. United States, 213 F.3d 819, 827 (4th Cir. 2000); Aliota v. Graham, 984 F.2d 1350, 1358 (3d Cir. 1993).

Under the FTCA, the scope of employment inquiry is governed by the state law of the place where the alleged tort occurred.  Brown, 949 F.2d at 1012 n.7.  There is evidence on the record that Defendant reported Plaintiff's statement in Texas and Kansas.  Under Kansas law, "an employee is acting within the scope of the employment if the employee is performing services for which the employee has been employed or is doing anything reasonably incidental to the employment.  The test is not necessarily whether the specific conduct was expressly authorized or forbidden by the employer, but whether such conduct should have been fairly foreseen from the nature of the employment and the duties relating to it."  Commerce Bank of St. Joseph, N.A. v. State, 833 P.2d 996, 999 (Kan. 1992).  "The general rule is that an employer is liable for the reckless, wilful, intentional, wanton, or malicious acts of an employee as well as for heedless and careless acts if they are committed while the employee is acting in the execution of his authority and within the course of his employment, or with a view to the furtherance of his employer's business, and not for a purpose personal to the employee."  Id. (citing Williams v. Community Drive-In Theater, Inc., 520 P.2d 1296

4

(Kan. 1974)).[2]

In this case, Plaintiff has stated facts that create a material dispute regarding Defendant's motivation in reporting her statement. Under Kansas law, if Defendant's sole reason for reporting Plaintiff was his personal dislike for civilian contractors in general and for Plaintiff in particular, and was in no way undertaken with a view to the furtherance of promoting the Army's security goals, then Defendant's conduct would have been outside the scope of his employment. Therefore, Plaintiff must be allowed to conduct some limited discovery to attempt to prove this allegation.

### III. CONCLUSION

Plaintiff will be given the opportunity to conduct limited discovery on the issue of Defendant's motives in reporting Plaintiff's statement. The Court's rulings on the pending motions will be deferred. Plaintiff shall complete her discovery within sixty (60) days. Following discovery, Plaintiff shall supplement her suggestions in opposition to Defendant's Motion to Substitute within thirty (30) days.

IT IS SO ORDERED.

DATE: September 18, 2008

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT

---

[2] Neither party has addressed the scope of employment question under Texas law. However, Texas law seems to be essentially the same as Kansas law on this issue. See e.g., Sheffield v. Central Freight Lines, Inc., 435 S.W.2d 954, 956 (Tex. Civ. App. 1968); Wrenn v. G.A.T.X. Logistics, Inc., 73 S.W.3d 489, 494 (Tex. App. 2002) ("Intentional torts committed in the accomplishment of a duty entrusted to the employee, rather than because of personal animosity, may render the employer liable.").

5